**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
DAVID ELLIOT (270381)
*david@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:     (619) 798-2006
Facsimile:     (313) 293-7071

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY BACKUS, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>   v.<br><br>BISCOMERICA CORPORATION,<br><br>                Defendant. | Case No: <br>Pleading Type: Class Action<br><br>**CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF, ABATEMENT OF NUISANCE, VIOLATIONS OF THE UNFAIR COMPETITION LAW, AND BREACH OF IMPLIED WARRANTY**<br><br>**DEMAND FOR JURY TRIAL** |

**TABLE OF CONTENTS**

I.      JURISDICTION AND VENUE ........................................................................1

II.     INTRADISTRICT ASSIGNMENT ...............................................................1

III.    NATURE OF THE ACTION .........................................................................1

IV.     PARTIES .....................................................................................................2

V.      NATURE OF TRANS FAT .........................................................................2

        A.      There is a Scientific Consensus That Trans Fat is Extremely Harmful .................4

        B.      The Artificial Trans Fat in the Trans Fat Cookies Causes Cardiovascular Disease ...........5

        C.      The Artificial Trans Fat in the Trans Fat Cookies Causes Type-2 Diabetes .....................8

        D.      The Artificial Trans Fat in the Trans Fat Cookies Causes Breast, Prostate, and Colorectal Cancer ...........8

        E.      The Artificial Trans Fat in the Trans Fat Cookies Causes Alzheimer's Disease and Cognitive Decline ...........9

        F.      The Artificial Trans Fat in the Trans Fat Cookies Causes Organ Damage .......................11

        G.      Artificial Trans Fat Is So Inherently Dangerous It Has Been Banned by an Increasing Number of American and European Jurisdictions ...........11

VI.     PLAINTIFF'S PURCHASES OF THE TRANS FAT COOKIES ..................12

VII.    THE TRANS FAT COOKIES UNNECESSARILY CONTAIN PHO AND ARTIFICIAL TRANS FAT ...........12

VIII.   DEFENDANT'S PRACTICES ARE "UNFAIR" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW ...........13

IX.     DEFENDANT'S PRACTICES ARE "UNLAWFUL" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW ...........14

X.      INJURY .....................................................................................................15

XI.     DELAYED DISCOVERY ...........................................................................16

XII.    CLASS ACTION ALLEGATIONS ...........................................................16

XIII.   CAUSES OF ACTION ...............................................................................18

        First Cause of Action .....................................................................................18

        Second Cause of Action ..................................................................................20

        Third Cause of Action .....................................................................................21

        Fourth Cause of Action ...................................................................................22

XIV.    PRAYER FOR RELIEF ...............................................................................22

XV.     JURY DEMAND ........................................................................................23

XVI.    APPENDIX A- TRANS FAT COOKIES ..................................................... I

i

Plaintiff Troy Backus, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby sues Defendant Biscomerica Corporation ("Biscomerica" or "Defendant"), and upon information and belief and investigation of counsel, alleges as follows:

## I.   JURISDICTION AND VENUE

1.   This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the class defined herein reside in states other than the state of which Biscomerica resides.

2.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff resides in and suffered injuries, as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and Defendant: (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District through the distribution and sale of its products in this District; and (2) is subject to personal jurisdiction in this District.

## II.   INTRADISTRICT ASSIGNMENT

3.   This civil action arises out of the events and omissions of Defendant Biscomerica Corporation which occurred in Marin County, California. Pursuant to Civil Local Rule 3-2(c), this action should be assigned to the San Francisco or Oakland Division. Plaintiff requests the San Francisco Division as it is closer to his home in Marin County.

## III.   NATURE OF THE ACTION

4.   Biscomerica manufactures, distributes, and sells a variety of packaged cookies[1] (the "Trans Fat Cookies"), which contain partially hydrogenated oil ("PHO").

5.   PHO is a food additive banned in many parts of the world due to its artificial trans fat content.

---

[1] The Trans Fats Cookies are more specifically identified in **Appendix A**, attached hereto.

6.      Artificial trans fat is a toxic carcinogen for which there are many safe and commercially viable substitutes.

7.      On June 17, 2015, the FDA determined that PHO is unsafe for use in food. Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34650 (June 17, 2015) (hereinafter "FDA Final PHO Determination"). Yet Biscomerica continues to incorporate this illegal, dangerous additive into the Trans Fat Cookies, even after the FDA tentatively, then finally declared it unsafe for use in food, rendering products made with PHO unlawful and adulterated.

8.      Although safe, low-cost, and commercially acceptable alternatives to PHO exist, including those used in competing brands, Defendant unfairly elects *not* to use these safe alternatives in the Trans Fat Cookies in order to increase profit at the expense of the health of consumers.

9.      Plaintiff Troy Backus repeatedly purchased and consumed the Trans Fat Cookies during the Class Period defined herein.

10.     This action is brought to remedy Defendant's unfair and unlawful conduct. On behalf of the class defined herein, Plaintiff seeks an order compelling Defendant to, *inter alia*: (1) cease using artificial trans fat as an ingredient in the Trans Fat Cookies; (2) award Plaintiff and the Class members restitution, actual damages, and punitive damages to the extent permitted under the law; and (3) pay costs, expenses, and reasonable attorneys' fees.

## IV.     PARTIES

11.     Defendant Biscomerica Corporation is a California corporation with its principal place of business in Rialto, California. Biscomerica owns, manufactures, distributes and sells the Trans Fat Cookies.

12.     Plaintiff Troy Backus is a resident of Marin County, California who repeatedly purchased the Trans Fat Cookies for personal and household consumption.

## V.     NATURE OF TRANS FAT

13.     Artificial trans fat is a toxic, unlawful food additive manufactured via an industrial process called partial hydrogenation, in which hydrogen atoms are added to normal vegetable oil by heating the oil to temperatures above 400˚F in the presence of ion donor catalyst metals such as

rhodium, ruthenium, and nickel.[2] The resulting product is known as partially hydrogenated oil, or PHO, and it is used in dangerous quantities in the Trans Fat Cookies.

14.    PHO was invented in 1901 and patented in 1902 by German chemist Wilhelm Normann. Artificial trans fat molecules differ chemically from the natural fat molecules in other food products.[3]

15.    Natural fat, except the trace amounts of natural trans fat from ruminant animal sources like beef, milk, and mutton, comes in two varieties: (1) fats that lack carbon double bonds ("saturated fat") and (2) fats that have carbon double bonds with contiguous hydrogen atoms ("cis fat"). Trans fat, in contrast to cis fat, has carbon double bonds with hydrogen atoms on opposite sides of the carbon chain.



16.    PHO was initially thought to be a "wonder product" attractive to the processed food industry because it combines the very low cost of unsaturated cis fat with the "mouth feel" and long shelf life of saturated fat. Like processed cis fat, PHO is manufactured from low-cost legumes,[4] while the saturated fat it replaces in processed food is derived from relatively expensive animal and tropical plant sources.[5] Given its versatility, ten years ago PHO was used in 40% of processed packaged foods.[6] Now, that its toxic properties are known, few food companies continue to use PHO. Defendant, however, has decided not to follow its more responsible peers and cease using PHO, instead unfairly

---

[2] *See* Alice H. Lichtenstein, *Trans Fatty Acids, Plasma Lipid Levels, and Risk of Developing Cardiovascular Disease*, 95 Circulation 2588, 2588-90 (1997).

[3] *See* Alberto Ascherio et al., *Trans Fatty Acids & Coronary Heart Disease*, 340 New Eng. J. Med. 94, 94-8 (1999). *See also* Walter Willett, *The Scientific Case for Banning Trans Fats*, Scientific American, *available at* www.scientificamerican.com/article/the-scientific-case-for-banning-trans-fats/ (last visited June 24, 2015).

[4] *e.g.*, corn oil, soybean oil, peanut oil

[5] *e.g.*, butter, cream, tallow, palm, coconut oil

[6] Mary Carmichael, *The Skinny on Bad Fat*, Newsweek, Dec. 1, 2003, at 66. *See also* Kim Severson, *Hidden Killer. It's Trans Fat. It's Dangerous. And It's In Food You Eat Every Day*, S.F. Chron., Jan. 30, 2002.

1    placing its profits over public health.

2          **A.    There is a Scientific Consensus That Trans Fat is Extremely Harmful**

3          17.    As detailed further herein, PHO causes cardiovascular heart disease, diabetes, cancer, and

4    Alzheimer's disease, and accelerates memory damage and cognitive decline.

5          18.    There is "no safe level" of PHO or artificial trans fat intake.[7]

6          19.    According to the established consensus of scientists, consumers should keep their

7    consumption of trans fat "as low as possible."[8]

8          20.    In addition, "trans fatty acids are not essential and provide no known benefit to human

9    health."[9] Thus, while "the [Institute of Medicine] sets tolerable upper intake levels (UL) for the highest

10   level of daily nutrient intake that is likely to pose no risk of adverse health effects to almost all

11   individuals in the general population[,] . . . the IOM does **not** set a UL for trans fatty acid because **any**

12   incremental increase in trans fatty acid intake increases the risk of CHD."[10]

13         21.    Today there is no question about the scientific consensus on trans fat. Dr. Julie Louise

14   Gerberding, who served for both of President Bush's two terms as head of the United States Centers for

15   Disease Control and Prevention, writes:

16              The scientific rationale for eliminating exposure to artificial trans fatty acids in foods

17              is rock solid. There is no evidence that they provide any health benefit, and they are

18              certainly harmful. These compounds adversely affect both low- and high-density

19              lipoprotein cholesterol levels and increase the risk for coronary heart disease, even at

20              relatively low levels of dietary intake. Gram for gram, trans fats are far more potent

21              than saturated fats in increasing the risk for heart disease, perhaps because they also

22              have   pro-inflammatory   properties   and   other   adverse   effects   on   vascular

23

24   [7] Food & Nutrition Bd., Inst. of Med., *Dietary Reference Intakes For Energy, Carbohydrate, Fiber, Fat,*
     *Fatty Acids, Cholesterol, Protein, and Amino Acids* (2005).

25   [8] *Id.*

26   [9] Food Labeling; Health Claim; Phytosterols and Risk of Coronary Heart Disease; Proposed Rule, 75
27   Fed. Reg. 76526, 76542 (Dec. 8, 2010).

     [10] *Id.* (emphasis added).
28

endothelium . . . . Eliminating exposure to these dangerous fats could have a powerful population impact—potentially protecting 30,000 to 100,000 Americans from death related to heart disease each year.[11]

22.     Dr. Mozaffarian of Harvard Medical School writes in the New England Journal of Medicine:

> Given the adverse effects of trans fatty acids on serum lipid levels, systemic inflammation, and possibly other risk factors for cardiovascular disease and the positive associations with the risk of CHD, sudden death from cardiac causes, and possibly diabetes, the potential for harm is clear. The evidence and the magnitude of adverse health effects of trans fatty acids are in fact far stronger on average than those of food contaminants or pesticide residues, which have in some cases received considerable attention.[12]

23.     Given its nature as an artificial chemical not naturally found in any food and the considerable harm that it causes to human health, Dr. Walter Willett, also at Harvard Medical School, finds the most direct analogue of trans fat to be not any natural fat but contaminants such as pesticides. He states that the addition of artificial trans fat to food by companies like Biscomerica "is a food safety issue . . . this is actually contamination."[13]

**B.     <u>The Artificial Trans Fat in the Trans Fat Cookies Causes Cardiovascular Disease</u>**

24.     Trans fat raises the risk of CHD more than any other known consumed substance.[14]

25.     Removing trans fat equivalent to 2% of total calories from the American diet "would prevent approximately 30,000 premature coronary deaths per year, and epidemiologic evidence suggests

---

[11] Julie Louise Gerberding, *Safer Fats for Healthier Hearts: The Case for Eliminating Dietary Artificial Trans Fat Intake*, 151 Ann. Intern. Med., 137-38 (2009).

[12] Dariush Mozaffarian et al., *Trans Fatty Acids and Cardiovascular Disease*, 354 N. Engl. J. Med. 1601-13 (2006).

[13] Rebecca Coombes, *Trans fats: chasing a global ban*, 343 British Med. J. (2011).

[14] Mozaffarian, 354 New Eng. J. Med. at 1603.

this number is closer to 100,000 premature deaths annually."[15]

26.     From "10 to 19 percent of CHD events in the United States could be averted by reducing the intake of trans fat."[16]

27.     By raising LDL levels and lowering HDL levels, trans fat causes a wide variety of dangerous heart conditions, including vasodilation, coronary artery disease, and primary cardiac arrest.

28.     In a joint Dietary Guidelines Advisory Committee Report, the Department of Health and Human Services and the U.S. Department of Agriculture recognized "[t]he relationship between trans fatty acid intake and LDL cholesterol is direct and progressive, increasing the risk of cardiovascular disease."[17]

29.     The American Heart Association warns, "trans fats raise your bad (LDL) cholesterol levels and lower your good (HDL) cholesterol levels. Eating trans fats increases your risk of developing heart disease."[18]

30.     After a review of literature on the connection between the consumption of artificial trans fat and coronary heart disease, the FDA concluded:

> [B]ased on the consistent results across a number of the most persuasive types of study designs (i.e., intervention trials and prospective cohort studies) that were conducted using a range of test conditions and across different geographical regions and populations . . . the available evidence for an adverse relationship between trans fat intake and CHD risk is strong.[19]

31.     The FDA further found "[t]o date, there have been no reports issued by authoritative

---

[15] Alberto Ascherio et al., *Trans Fatty Acids & Coronary Heart Disease*, 340 New Eng. J. Med. 94, 94-8 (1999).

[16] Mozaffarian, 354 New Eng. J. Med. at 1611.

[17] Dep't of Health & Human Serv. & U.S. Dep't of Agric., 2005 Dietary Guidelines Advisory Committee Report, Section 10 (2005).

[18] Am. Heart Ass'n., *Trans Fat Overview*, *available at* http://www.heart.org/HEARTORG/GettingHealthy/FatsAndOils/Fats101/Trans-Fats_UCM_301120_Article.jsp (last visited June 24, 2015).

[19] Ctr. for Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions & Answers About *Trans* Fat Nutrition Labeling.

sources that provide a level of trans fat in the diet . . . below which there is no risk of [Coronary Heart Disease]."[20] Rather, there "is a positive linear trend between trans fatty acid intake and LDL cholesterol concentration, and therefore there is a positive relationship between trans fatty acid intake and the risk of CHD."[21]

32.     This evidence of trans fat's horrific impact on the health of Americans is more than 20 years old. Dr. Walter Willett of Harvard Medical School found in 1994:

> [E]ven the lower estimates from the effects [of PHO] on blood lipids would suggest that more than 30,000 deaths per year may be due to the consumption of partially hydrogenated vegetable fat. Furthermore, the number of attributable cases of nonfatal coronary heart disease will be even larger.[22]

33.     By taking blood samples from 179 survivors of cardiac arrest and 285 randomly-selected control patients and comparing the top fifth with the bottom fifth of participants by trans fat intake, another study published in the American Heart Association's *Circulation* found that the largest consumers of trans fat have three times the risk of suffering primary cardiac arrest, even after controlling for a variety of medical and lifestyle risk factors.[23]

34.     Australian researchers observed that heart attack patients possess elevated amounts of trans fat in their adipose tissue compared to controls, strongly linking heart disease with long-term consumption of trans fat.[24]

35.     While cholesterol dysregulation and pro-inflammatory effects are the best-documented pathways through which trans fat causes heart disease and death, another study isolated an additional method by which trans fat causes atherosclerosis, namely by degrading the function of TGF-β, a protein

---

[20] 75 Fed. Reg. 76526, 76542 (Dec. 8, 2010).

[21] *Id.*

[22] W.C. Willett et al., *Trans Fatty Acids: Are the Effects only Marginal?* 84 Am. J. Pub. Health 722, 723 (1994).

[23] Rozenn N. Lemaitre et al., *Cell Membrane Trans-Fatty Acids and the Risk of Primary Cardiac Arrest*, 105 Circulation 697, 697-701 (2002).

[24] Peter M. Clifton et al., *Trans Fatty Acids In Adipose Tissue And The Food Supply Are Associated With Myocardial Infarction.* 134 J. NUTR. 874, 874-79 (2004).

responsible for preventing the development of atherosclerotic lesions.[25]

36.    TGF-β also functions to suppress cancerous tumors. The same scientists suggest that the degradation of TGF-β may be the reason that trans fat consumption is strongly linked to multiple forms of cancer.[26]

**C.    The Artificial Trans Fat in the Trans Fat Cookies Causes Type-2 Diabetes**

37.    Artificial trans fat also causes type-2 diabetes.[27]

38.    In particular, trans fat disrupts the body's glucose and insulin regulation system by incorporating itself into cell membranes, causing the insulin receptors on cell walls to malfunction, and in turn elevating blood glucose levels and stimulating further release of insulin.

39.    Researchers at Northwestern University's medical school found that mice show multiple markers of type-2 diabetes after eating a high trans fat diet for only four weeks.[28]

40.    By the eighth week of the study, mice fed the diet high in trans fat showed a 500% increase compared to the control group in hepatic interleukin-1β gene expression, one such marker of diabetes, indicating the extreme stress even short-term exposure to artificial trans fat places on the body.[29]

41.    A 14-year study of 84,204 women found that for every 2 percent increase in energy intake from artificial trans fat, the relative risk of type-2 diabetes was increased by 39 percent.[30]

**D.    The Artificial Trans Fat in the Trans Fat Cookies Causes Breast, Prostate, and Colorectal Cancer**

42.    Trans fat is a carcinogen which causes breast, prostate, and colorectal cancer.

---

[25] Chen, C.L. et al., *A mechanism by which dietary trans fats cause atherosclerosis*, J. of Nutr. Biochemistry 22(7) 649-655 (2011).

[26] *Id.*

[27] Am. Heart Ass'n., *Trans Fat Overview*.

[28] Sean W. P. Koppe et al., *Trans fat feeding results in higher serum alanine aminotransferase and increased insulin resistance compared with a standard murine high-fat diet*, 297 Am. J. Physiol. Gastrointest Liver Physiol. 378 (2009).

[29] *Id.*

[30] Jorge Salmeron et al., *Dietary Fat Intake and Risk of Type 2 Diabetes in Women*, 73 Am. J. Clinical Nutrition 1019, 1023 (2001).

43.     A 13-year study of 19,934 French women showed 75 percent more women contracted breast cancer in the highest quintile of trans fat consumption than did those in the lowest.[31]

44.     In a 25-year study of 14,916 American physicians, those in the highest quintile of trans fat consumption had more than double the risk of developing prostate cancer than the doctors in the lowest quintile.[32]

45.     A study of 1,012 American males observing trans fat intake and the risk of prostate cancer found "[c]ompared with the lowest quartile of total trans-fatty acid consumption, the higher quartiles gave odds ratios (ORs) equal to 1.58," meaning those in the highest quartile are 58% more likely to contract prostate cancer than those in the lowest.[33]

46.     A 600-person study found an 86 percent greater risk of colorectal cancer in the highest trans fat consumption quartile.[34]

47.     A 2,910-person study found "trans-monounsaturated fatty acids . . . were dose-dependently associated with colorectal cancer risk," which showed "the importance of type of fat in the etiology and prevention of colorectal cancer."[35]

E.      **The Artificial Trans Fat in the Trans Fat Cookies Causes Alzheimer's Disease and Cognitive Decline**

48.     Trans fat causes Alzheimer's Disease and cognitive decline.

49.     In a study examining 815 Chicago area seniors, researchers found "increased risk of

---

[31] Véronique Chajès et al., *Association between Serum Trans-Monounsaturated Fatty Acids and Breast Cancer Risk in the E3N-EPIC Study.* 167 Am. J. Epidemiology 1312, 1316 (2008).

[32] Jorge Chavarro et al., *A Prospective Study of Blood Trans Fatty Acid Levels and Risk of Prostate Cancer.*, 47 Proc. Am. Assoc. Cancer Research 95, 99 (2006).

[33] Xin Liu et al., *Trans-Fatty Acid Intake and Increased Risk of Advanced Prostate Cancer: Modification by RNASEL R462Q Variant*, 28 Carcinogenesis 1232, 1232 (2007).

[34] L.C. Vinikoor et al., *Consumption of Trans-Fatty Acid and its Association with Colorectal Adenomas*, 168 Am. J. of Epidemiology 289, 294 (2008).

[35] Evropi Theodoratou et al., *Dietary Fatty Acids and Colorectal Cancer: A Case-Control Study*, 166 Am. J. Epidemiology 181 (2007).

incident Alzheimer disease among persons with high intakes of . . . trans-unsaturated fats."[36]

50.     The study "observed a strong increased risk of Alzheimer disease with consumption of trans-unsaturated fat."[37]

51.     In a study of 1,486 women with type-2 diabetes, researchers found "[h]igher intakes of . . . trans fat since midlife . . . were [] highly associated with worse cognitive decline . . . ."[38]

52.     The study cautioned "[d]ietary fat intake can alter glucose and lipid metabolism and is related to cardiovascular disease risk in individuals with type 2 diabetes. Because insulin, cholesterol, and vascular disease all appear to play important roles in brain aging and cognitive impairments, dietary fat modification may be a particularly effective strategy for preventing cognitive decline, especially in individuals with diabetes."[39] (citations omitted).

53.     Artificial trans fat also damages the brains of those who consume it. A study conducted by UCSD School of Medicine of 1,018 men, mostly younger men, found trans fat consumption to be strongly correlated with impaired memory.[40] The authors of the study, appearing last year in *Circulation*, the American Heart Association's peer-reviewed journal, conclude that "Greater dTFA [dietary trans fatty acid] was significantly associated with worse word memory in adults aged 20-45 years, often critical years for career building."

54.     Performing a word memory test, each additional gram per day of trans fat consumed was associated with 0.76 fewer words correctly recalled. The authors suggest trans fat's well-established pro-oxidant effect and its damage to cell energy processes is the pathway by which trans fat consumption damages memory ability. The young men with the highest trans fat consumption scored 12 fewer

---

[36] Martha Clare Morris et al., *Dietary Fats and the Risk of Incident Alzheimer Disease*, 60 Arch. Neurol. 194, 198-9 (2003).

[37] *Id.*

[38] Elizabeth E. Devore et al., *Dietary Fat Intake and Cognitive Decline in Women with Type 2 Diabetes*, 32 Diabetes Care 635 (2009).

[39] *Id.*

[40] Golomb, B. et al., *Trans Fat Consumption is Adversely Linked to Memory in Working-Age Adults*, J. of Am. Hearth Assoc. 130:A15572 (2014).

1 recalled words on the 104-word test.[41]

2      **F.**    **The Artificial Trans Fat in the Trans Fat Cookies Causes Organ Damage**

3      55.    Artificial trans fat damages vital organs, including the heart, by causing chronic systemic

4 inflammation, where the immune system becomes persistently overactive, damages cells, and causes

5 organ dysfunction.[42]

6      **G.**    **Artificial Trans Fat Is So Inherently Dangerous It Has Been Banned by an**

7              **Increasing Number of American and European Jurisdictions**

8      56.    In 2008, California became the first state to ban all restaurant food with artificial trans

9 fat. Trans fats now may not be served in California's schools or restaurants in an amount greater than

10 half a gram per serving, nor contain any ingredient with more than this amount.[43]

11      57.    New York City banned trans fat in restaurants in 2006. Similar laws exist in Philadelphia;

12 Baltimore; Stamford, Connecticut; and Montgomery County, Maryland.

13      58.    A 2004 Danish law restricted all foods to fewer than 2 percent of calories from artificial

14 trans fat. Switzerland made the same restriction in 2008.[44]

15      59.    After conducting a surveillance study of Denmark's 2004 trans fat ban, researchers

16 concluded the change "did not appreciably affect the quality, cost or availability of food" and did not

17 have "any noticeable effect for the consumers."[45]

18      60.    Similar bans have been introduced in Austria and Hungary. Brazil, Argentina, Chile, and

19

20 _____

[41] *Id.*

21 [42] *See* Lopez-Garcia et al., *Consumption of Trans Fat is Related to Plasma Markers of Inflammation and*
22 *Endothelial Dysfunction,* 135 J. Nutr. 562-66 (2005); *see also* Baer et al., *Dietary fatty acids affect*
*plasma markers of inflammation in healthy men fed controlled diets; a randomized crossover study,* 79
23 Am. J. Clin. Nutr. 969-73 (2004); Mozaffarian & Clarke, *Quantitative effects on cardiovascular risk*
*factors and coronary heart disease risk of replacing partially hydrogenated vegetable oils with other fats*
24 *and oils,* 63 Euro. J. of Clin. Nutr. S22-S33 (2009); Mozaffarian et al., *Trans Fatty acids and systemic*
25 *inflammation in heart failure*, 80 Am. J. Clin. Nutr. 1521-25 (2004).

[43] Cal. Educ. Code § 49431.7; Cal. Health & Saf. Code § 114377.

26 [44] Andrew Collier, *Deadly Fats: Why Are We still Eating Them?*, The Independent (UK), June 10, 2008.

27 [45] Mozaffarian, 354 New Eng. J. Med. at 1610; *see also* Steen Stender, *High Levels of Industrially*
*Produced Trans Fat in Popular Fast Food*, 354 New Eng. J. Med. 1650, 1652 (2006).

28

South Africa have all taken steps to reduce or eliminate artificial trans fats from food.[46]

61.    In 2006, a trans fat task force co-chaired by Health Canada and the Heart and Stroke Foundation of Canada recommended capping trans fat content at 2 percent of calories for tub margarines and spreads and 5 percent for all other foods. On September 30, 2009, British Columbia became the first province to impose these rules on all restaurants, schools, hospitals, and special events.[47]

62.    In its European Food and Nutrition Action Plan 2015-2020, the World Health Organization identified one of its goals as "making the European Region trans fat-free."[48] The European Commission is preparing legislation to ban the use of trans fats in 28 nations in the European Union.[49]

63.    On June 17, 2015, the FDA released its Final Determination Regarding Partially Hydrogenated Oils, in which it declared "PHOs are not GRAS [Generally Recognized as Safe] for any use in human food."[50]

64.    The FDA will begin filing its own enforcement actions against companies that use PHOs in 2018.

## VI.    PLAINTIFF'S PURCHASES OF THE TRANS FAT COOKIES

65.    Plaintiff Troy Backus repeatedly purchased the Trans Fat Cookies during the Class Period.

66.    Mr. Backus purchased the Trans Fat Cookies approximately once a month from various California stores in this District.

67.    Mr. Backus' most recent purchase was in late 2015.

## VII.    THE TRANS FAT COOKIES UNNECESSARILY CONTAIN PHO AND ARTIFICIAL TRANS FAT

68.    Biscomerica's use of PHO in the Trans Fat Cookies is unnecessary. There are several safe

---

[46] Coombes, *Trans fats: chasing a global ban*, 343 British Med. J. 5567 (2011).

[47] *Province Restricts Trans Fat in B.C.*, British Columbia Ministry of Healthy Living and Sport Press Release (2009), *available at* http://tinyurl.com/betty15

[48] Regional Committee for Europe, *European Food and Nutrition Action Plan 2015-2020*, 64th session.

[49] Basu, J. *European trans fat report 'could lead to ban'*, Food Navigator.com, April 15, 2015.

[50] FDA Final PHO Determination, 80 Fed. Reg. 34650, 34651 (June 17, 2015).

1   substitutes for PHO and artificial trans fat.

2        69.    Most manufacturers of competing cookie products have responsibly decided to refrain

3   from adding artificial trans fat to their products. Such brands sold in the United States include: Oreo,

4   Famous Amos Chocolate Chip Cookies, Keebler Simple Sandies, Loaker Quadratini Hazelnut Wafer

5   Cookies, and Pepperidge Farm Milano Cookies.

6        70.    Although commercially viable alternative formulations and substitutes for PHO were and

7   are available, Defendant elects not to use them in the Trans Fat Cookies in order to increase its profits at

8   the expense of consumers' health.

9   **VIII.**    **DEFENDANT'S PRACTICES ARE "UNFAIR" WITHIN THE MEANING OF THE**

10   **CALIFORNIA UNFAIR COMPETITION LAW**

11        71.    Defendant's practices as described herein are "unfair" within the meaning of the

12   California Unfair Competition Law because its conduct is immoral, unethical, unscrupulous, or

13   substantially injurious to consumers, and the utility of the conduct to Defendant does not outweigh the

14   gravity of the harm to Biscomerica's victims.

15        72.    In particular, while Defendant's use of PHO in the Trans Fat Cookies may have some

16   utility to Defendant in that it allows Defendant to realize higher profit margins than if it used safer PHO

17   substitutes, this utility is small and far outweighed by the gravity of the serious health harm Biscomerica

18   inflicted upon consumers.

19        73.    Defendant's conduct injures competing manufacturers of similar products that do not

20   engage in its unfair, immoral behavior, especially given Biscomerica's large market share and the

21   limited retail shelf space.

22        74.    Moreover, Defendant's practices violate public policy as declared by specific

23   constitutional, statutory, or regulatory provisions, including the California Health & Safety Code §

24   114377 and California Education Code § 49431.7.

25        75.    Defendant's actions also violate public policy by causing the United States, California,

26   and every other state to pay—via Medicare, Medicaid, Affordable Care Act Exchange subsidies,

27   veterans' health programs, public employee and retiree health insurance—for treatment of trans fat-

28   related illnesses.

13

76. Further, the injury to consumers from Defendant's practices is substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

## IX. DEFENDANT'S PRACTICES ARE "UNLAWFUL" WITHIN THE MEANING OF THE CALIFORNIA UNFAIR COMPETITION LAW

77. Biscomerica's practices as described herein are "unlawful" within the meaning of the California Unfair Competition Law because PHO is not Generally Recognized as Safe (GRAS). Therefore, Defendant's use of PHO renders its products adulterated within the meaning of 21 U.S.C. § 342(a)(2)(C).

78. The PHO used in the Trans Fat Cookies appears nowhere on the FDA's list of the hundreds of substances it considers GRAS.[51]

79. PHO also fails to meet the fundamental requirement for GRAS status—that the substance is safe. In fact, the FDA has explicitly recognized that there is no safe level of artificial trans fat consumption.

80. Under the Food Additives Amendment of 1958, which amended the FDCA, all food additives are unsafe unless they (1) fall within a specified exemption to the statute's definition of food additive, or (2) their use is pursuant to FDA approval. Because the PHO used in the Trans Fat Cookies do not meet either of these exceptions, they are, and long have been, unsafe and unlawful for use in food.

81. Biscomerica's use of PHO in the Trans Fat Cookies thus constitutes adulteration under 21 U.S.C. § 342 and Cal. Health & Safety Code § 110545.

82. On November 8, 2013, the FDA made its initial determination that PHO is not GRAS.[52]

83. On June 17, 2015, after extensive public comment, the FDA determined trans fat is not GRAS.[53]

---

[51] *See* 21 C.F.R. §§ 181, 182, 184 and 186.

[52] 78 Fed. Reg. 67169 (November 8, 2013).

[53] 80 Fed. Reg. 34650 (June 17, 2015).

84.     At no point during the class period was there a scientific consensus PHO was safe. Indeed, for more than two decades, the scientific consensus has been that it is unsafe.

## X.     INJURY

85.     When purchasing the Trans Fat Cookies, Plaintiff was seeking products of particular qualities, including products that did not negatively affect blood cholesterol levels or the health of his cardiovascular system, and products made with safe, lawful ingredients.

86.     Plaintiff purchased the Trans Fat Cookies believing they had the qualities he sought based on the natural assumption that food sold in stores by large companies would not have unsafe and unlawful ingredients.

87.     Instead, they were actually unsatisfactory to him for the reasons described herein.

88.     Plaintiff lost money as a result of Defendant's conduct because he purchased products that were detrimental to his health and were unfairly offered for sale in violation of federal and California law. Had Defendant not violated the law, Plaintiff would not have been able to purchase the Trans Fat Cookies.

89.     Plaintiff suffered physical injury when he repeatedly consumed Defendant's Trans Fat Cookies, because consuming artificial trans fat in *any* quantity, including the quantity he actually consumed, inflames and damages vital organs and substantially increases the risk of heart disease, diabetes, cancer, and death.

90.     The Trans Fat Cookies contain an unsafe amount of artificial trans fat which renders them unfit for their ordinary use.

91.     The Trans Fat Cookies are not fit for human consumption and have a value of $0.

92.     Like most consumers, Mr. Backus is a busy person and cannot reasonably inspect every ingredient of every food that he purchases for himself and others, and he was unaware that the Products were dangerous when he purchased them.

93.     Plaintiff is not a nutritionist, food expert, or food scientist, but rather a lay consumer who did not have the specialized knowledge that Defendant had. Even today, the details of the dangers of artificial trans fat are unknown to millions of Americans.

94.     Plaintiff lost money as a result of Defendant's unlawful behavior. Plaintiff altered his

position to his detriment and suffered loss in an amount equal to the amount he paid for the Trans Fat Cookies.

## XI.   DELAYED DISCOVERY

95.     Plaintiff did not discover that Defendant's behavior was unfair and unlawful until last year, when he learned the true extent of the dangers of consuming trans fat and that Defendant was still selling the Trans Fat Cookies illegally. Until this time, he lacked the knowledge regarding the facts of his claims against Defendant.

96.     Plaintiff is a reasonably diligent consumer who exercised reasonable diligence in his purchase, use, and consumption of the Products. Nevertheless, he would not have been able to discover Defendant's deceptive practices and lacked the means to discover them given that, like nearly all consumers, he is not an expert on nutrition and does not typically read or have ready access to scholarly journals such as The Journal of Nutrition,[54] The European Journal of Clinical Nutrition,[55] and The New England Journal of Medicine,[56] where the scientific evidence of artificial trans fat's dangers was published.

## XII.   CLASS ACTION ALLEGATIONS

97.     Plaintiff brings this action on behalf of himself and all others similarly situated (the "Class"), excluding Defendant's officers, directors, and employees, and the Court, its officers and their families. The Class is defined as:

> All persons who purchased in the United States, on or after January 1, 2008 (the "Class Period"), for household or personal use, cookie products manufactured or distributed by Defendant containing partially hydrogenated oil.

---

[54] Peter M. Clifton et al., *Trans Fatty Acids In Adipose Tissue And The Food Supply Are Associated With Myocardial Infarction*, 134 J. Nutr. 874, 874-79 (2004).

[55] A. Tavani et al., *Margarine intake and risk of nonfatal acute myocardial infarction in Italian women*, 51 Eur. J. Clin. Nutr. 30–32 (1997) (estimating a 50 percent greater risk of heart attack in women with high consumption of margarine, an association "independent of body mass index, history of hypertension and hyperlipidemia").

[56] Mozaffarian, 354 New Eng. J. Med. at 1611 ("10 to 19 percent of CHD events in the United States could be averted by reducing the intake of trans fat").

98.     Questions of law and fact common to Plaintiff and the Class include:

   a.  Whether Biscomerica's conduct constitutes a violation of the unfair prong of California's Unfair Competition Law;

   b.  Whether Biscomerica's conduct is a nuisance as defined by Cal. Civ. Code §§ 3479-3493;

   c.  Whether Biscomerica's conduct constitutes a violation of the unlawful prong of California's Unfair Competition Law;

   d.  Whether Biscomerica's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers;

   e.  Whether the slight utility Biscomerica realizes as a result of its conduct outweighs the gravity of the harm the conduct causes to its victims;

   f.  Whether Biscomerica's conduct violates public policy as declared by specific constitutional, statutory, or regulatory provisions;

   g.  Whether the injury to consumers from Biscomerica's practices is substantial;

   h.  Whether the injury to consumers from Biscomerica's practices is outweighed by benefits to consumers or competition;

   i.  Whether Class members are entitled to restitution;

   j.  Whether Class members are entitled to an injunction and, if so, its terms; and

   k.  Whether Class members are entitled to any further relief.

99.     By purchasing the Trans Fat Cookies, all Class members were subjected to the same wrongful conduct.

100.    Plaintiff's claims are typical of the Class' claims because all Class members were subjected to the same economic harm when they purchased the Trans Fat Cookies and suffered economic injury.

101.    Plaintiff will fairly and adequately protect the interests of the Class, has no interests that are incompatible with the interests of the Class, and has retained counsel competent and experienced in class litigation.

102.    The Class is sufficiently numerous, as it includes thousands of individuals who purchased

1    the Trans Fat Cookies throughout the United States during the Class Period.

2        103.   Class representation is superior to other options for the resolution of the controversy. The

3    relief sought for each Class member is small, as little as one dollar for some Class members. Absent the

4    availability of class action procedures, it would be infeasible for Class members to redress the wrongs

5    done to them.

6        104.   Biscomerica has acted on grounds applicable to the Class, thereby making final

7    injunctive relief or declaratory relief appropriate concerning the Class as a whole.

8        105.   Questions of law and fact common to the Class predominate over any questions affecting

9    only individual members.

10       106.   Class treatment is appropriate under Fed. R. Civ. P. 23(a) and both Fed. R. Civ. P.

11   23(b)(2) and 23(b)(3). Plaintiff will, if notice is required, confer with Defendant and seek to present the

12   Court with a stipulation and proposed order on the details of a class notice plan.

13                          **XIII.    CAUSES OF ACTION**

14                            **First Cause of Action**

15                **California Unfair Competition Law (Unlawful Prong)**

16                  **Cal. Bus. & Prof. Code §§ 17200 *et seq*.**

17       107.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set

18   forth in full herein.

19       108.   Defendant has made and distributed, in interstate commerce and in this District, products

20   that contain unlawful food additives. The Trans Fat Cookies were placed into interstate commerce by

21   Defendant and sold throughout the country and in this District.

22       109.   Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act

23   or practice."

24       110.   Defendant's conduct is "unlawful" because it violates the Federal Food, Drug, and

25   Cosmetic Act ("FDCA"), specifically, the Food Additives Amendment of 1958, which deems a food

26   additive unsafe unless it has met two exceptions, neither of which the PHO used in the Trans Fat

27   Cookies has met. 21 U.S.C. §§ 348, 342.

28       111.   Defendant's conduct also violates the FDCA:

                                    18

- 21 U.S.C. § 331(a) (prohibiting the "introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded");

- 21 U.S.C. § 331(b) (prohibiting the "adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce");

- 21 U.S.C. § 331(c) (prohibiting the "receipt in interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise");

- 21 U.S.C. § 331(k) (prohibiting "the doing of any other act with respect to, a food, drug, device, tobacco product, or cosmetic, if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded");

- 21 U.S.C. § 342(a) (which deems any food adulterated if it "contains any poisonous or deleterious substance which may render it injurious to health");

- 21 U.S.C. § 348 (prohibiting the use of any food additive unless it has been deemed GRAS);

112.    Defendant's conduct violates other provisions of the FDCA.

113.    Defendant's conduct further violates The California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 110100, which adopts all FDA regulations as state regulations. Biscomerica's conduct also violates the following sections of the Sherman Law:

- § 110085 (adopting all FDA food additive regulations as state regulations);

- § 110100 (adopting all FDA regulations as state regulations);

- § 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

- § 110620 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is adulterated.");

114.    Defendant's conduct may violate additional provisions of the Sherman Law.

115.    The use of artificial trans fat in the Trans Fat Cookies thus constitutes a violation of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

116.    Plaintiff suffered injury in fact and lost money or property as a result of Defendant's unlawful acts: he was denied the benefit of the bargain when he decided to purchase the Trans Fat Cookies over competing products that are less expensive and/or contain no artificial trans fat.

117.    Had Plaintiff been aware of Defendant's unlawful tactics, he would not have purchased the Trans Fat Cookies.

118.    Defendant's unlawful acts allowed it to sell more units of the Trans Fat Cookies than it would have otherwise, and at a higher price.

119.    In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Biscomerica from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign. Plaintiff intends to purchase the Products in the future when Defendant ceases its unfair business practices and removes trans fat.

120.    Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Trans Fat Cookies, which were acquired through acts of unfair competition.

## Second Cause of Action

### California Unfair Competition Law (Unfair Prong)

### Cal. Bus. & Prof. Code §§ 17200 *et seq*.

121.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

122.    Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

123.    The business practices and omissions of Defendant as alleged herein constitute "unfair" business acts and practices in that its conduct is immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to Biscomerica's victims.

124.    Further, Defendant's practices are unfair because they violate public policy as declared by specific constitutional, statutory, or regulatory provisions, including those policies embodied in the California Health & Safety Code and California Education Code.

125.     Further, Defendant's practices are unfair because the injury to consumers from Defendant's practices is substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

126.     In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Biscomerica from continuing to conduct business through unfair acts and practices and to commence a corrective advertising campaign. Plaintiff intends to purchase the products in the future when Defendant ceases its unfair business practices and removes trans fat.

127.     Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Trans Fat Cookies, which were acquired through acts of unfair competition.

### Third Cause of Action

**Nuisance**

**Cal. Civ. Code §§ 3479-3493**

128.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

129.     The public has a common right to a safe food supply and a common interest in ensuring that only safe foods are allowed for sale.

130.     Artificial trans fat is a dangerous and illegal ingredient that is harmful when consumed by humans in any amount. Defendant actively promotes and sells its Trans Fat Cookies, which contain trans fat. Defendant sells its Trans Fat Cookies to the public at large.

131.     Biscomerica's actions complained of herein have created a harmful condition that is injurious to the health of the public and affects a substantial number of people.

132.     These acts substantially and unreasonably interfere with the public's interests in having only safe, uncontaminated foods available for purchase, cause an unreasonable inconvenience to avoid, and are a menace to the public health and to the safety of children.

133.     Biscomerica is liable in public nuisance because by promoting and selling its Trans Fat Cookies that contain dangerous amounts of trans fat, it has created a dangerous condition that interferes with the public interest.

134.     Plaintiff suffered specific physical and emotional harm from Defendant's conduct when

1   he consumed Defendant's Trans Fat Cookies. Plaintiff continues to suffer emotional harm from knowing

2   that he unwittingly injured himself and others through the consumption of the Trans Fat Cookies.

3       135.    In accordance with Cal. Civ. Code § 3491, Plaintiff seeks an order abating Defendant's

4   injurious practices, and enjoining further acts.

5                               **Fourth Cause of Action**

6                       **Breach of Implied Warranty of Merchantability**

7       136.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set

8   forth in full herein.

9       137.    Defendant is a merchant with respect to goods of this kind, which were sold to Plaintiff

10  and other consumers, and there was in the sale to Plaintiff and other consumers an implied warranty that

11  those goods were merchantable.

12      138.    However, Biscomerica breached that warranty implied in the contract for the sale of

13  goods in that the Trans Fat Cookies are not safe for human consumption as set forth in detail herein

14  above.

15      139.    As a result of Defendant's conduct, Plaintiff did not receive goods as impliedly warranted

16  by Defendant to be merchantable.

17      140.    As a proximate result of this breach of warranty by Defendant, Plaintiff and other

18  consumers have been damaged.

19      141.    Plaintiff also seeks damages for the injury he suffered from Biscomerica's breach of the

20  implied warranty.

21              **XIV.    PRAYER FOR RELIEF**

22      WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general

23  public, prays for judgment against Defendant as follows:

24      A.      An order confirming that this class action is properly maintainable as a nationwide class

25              action as defined above, appointing Plaintiff and his undersigned counsel to represent the

26              Class, and requiring Defendant to bear the cost of class notice;

27      B.      An order requiring Biscomerica to pay restitution to Plaintiff and the Class so that they

28              may be restored any money which may have been acquired by means of any unfair

1       practice;

2    C.     An order requiring Defendant to disgorge any benefits received from Plaintiff and the

3        Class from unjust enrichment realized as a result of unfair practices;

4    D.     An order declaring the conduct complained of herein violates the Unfair Competition

5        Law;

6    E.     An order requiring Defendant to cease and desist its unfair practices;

7    F.     An order requiring Biscomerica to engage in a corrective advertising campaign;

8    G.     An order abating Defendant's injurious practices;

9    H.     An award of damages, pre-judgment, and post-judgment interest;

10    I.     An award of attorneys' fees and costs; and

11    J.     Such other and further relief as this Court may deem just, equitable, or proper.

## XV.    JURY DEMAND

Plaintiff requests a trial by jury.

DATED: July 12, 2016                Respectfully Submitted,

/s/ Gregory S. Weston
**THE WESTON FIRM**
GREGORY S. WESTON
DAVID ELLIOT
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:    (619) 798-2006
Facsimile:    (313) 293-7071

*Counsel for Plaintiff*

## XVI.    APPENDIX A- TRANS FAT COOKIES

- Checkers Assorted Cookies 12 oz
- Checkers Chocolate Chip Flavored Cookies 12 oz
- Checkers Ginger Snaps 12 oz
- Checkers Oatmeal Cookies 12 oz
- Checkers Raspberry Shortbread 8 oz
- Checkers Strawberry Shortbread 8 oz
- Granny's Oven Strawberry Shortbread 10 oz
- Granny's Oven Blueberry Shortbread 10 oz
- Granny's Oven Chocolate Chip Flavored Cookies 12 oz
- Granny's Oven Oatmeal Cookies 12 oz
- Granny's Oven Raspberry Shortbread 10 oz
- Knotts Apricot Shortbread 2 oz
- Knotts Blueberry Shortbread 2 oz
- Knotts Boysenberry Shortbread 2 oz
- Knotts Strawberry Shortbread 2 oz