UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY BACKUS,<br><br>        Plaintiff,<br><br>    v.<br><br>BISCOMERICA CORPORATION,<br><br>        Defendant. | Case No.16-cv-03916-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 9 |

Pending before the Court is Defendant Biscomerica Corporation's motion to dismiss the Class Action Complaint ("Compl.").[1]  Dkt. No. 9.  Because the Court finds that Plaintiff Troy Backus' claims are preempted by federal law, the Court GRANTS the motion to dismiss.

**I.    BACKGROUND**

Plaintiff brings this purported nationwide class action against Biscomerica for manufacturing, distributing, and selling packaged cookies that contain partially hydrogenated oil ("PHO"), an artificial form of trans fat.  Compl. ¶¶ 4–6, 97.  Plaintiff alleges that "trans fat is a toxic carcinogen" and PHO is consequently an "illegal, dangerous additive."  *Id.* ¶¶ 6–7.  According to Plaintiff, PHO "causes cardiovascular heart disease, diabetes, cancer, and Alzheimer's disease" and also "accelerates memory damage and cognitive decline."  *Id.* ¶ 17; *see also id.* ¶¶ 24–55.  Plaintiff cites several medical publications to support his allegation that "[t]here is 'no safe level' of artificial trans fat intake."  Compl. ¶ 18.  He alleges that because of these negative health effects he consequently "suffered physical injury when he repeatedly consumed Defendant's [cookies] . . . ."  *Id.* ¶ 89.

The Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits "[t]he introduction or

---

[1] The Court finds that this matter is appropriate for disposition without oral argument.  *See* N.D. Civ. L.R. 7–1(b).

delivery for introduction into interstate commerce of any food . . . that is adulterated . . . ." 21 U.S.C. § 331(a). This includes food additives that are "not generally recognized, among [qualified] experts . . . to be safe under the conditions of its intended use." *Id.* § 321(s); *see also* 21 C.F.R. 170.3(i) (defining "safe" as "a reasonable certainty in the minds of competent scientists that the substance is not harmful under the intended conditions of use."). Sections 342 and 348 further describe the conditions under which food and food additives may be considered "unsafe" or "adulterated." *Id.* §§ 342(a)(1), 342(a)(2)(C)(i), 348.

On November 8, 2013, the federal Food and Drug Administration ("FDA") "tentatively determined that there is no longer a consensus among qualified scientific experts that PHOs . . . are safe for human consumption . . . ." Tentative Determination Regarding Partially Hydrogenated Oils, 78 Fed. Reg. 67169–01, 67170 (Nov. 8, 2013). The FDA confirmed this determination on June 17, 2015. Final Determination Regarding Partially Hydrogenated Oils ("Final Determination"), 80 Fed. Reg. 34650–01 (June 17, 2015). The President then signed the Consolidated Appropriations Act ("Act") into law on December 18, 2015, which — consistent with the FDA's Final Determination — stated that PHO would not be considered unsafe or adulterated under Federal law until the June 18, 2018, compliance date. Consolidated Appropriations Act, 2016, Pub. L. No. 114–113, § 754, 129 Stat 2242, 2284 (2015).

Plaintiff faults Defendant for continuing to use PHO in its cookies, even after the FDA's Final Determination in June 2015. Compl. ¶¶ 7–8. Relying on the FDA's findings, Plaintiff brings several causes of action under state law, including violations of: (1) California's Unfair Competition Law ("UCL"); (2) Nuisance; and (3) the Implied Warranty of Merchantability. Plaintiff has brought similar actions in this district against other manufacturers of products that contain PHO. Several district courts have dismissed such claims. *See, e.g.*, *Backus v. Conagra Foods, Inc.*, No. C 16-00454 WHA, 2016 WL 3844331, at *1 (N.D. Cal. July 15, 2016); *Backus v. Nestlé USA, Inc.*, 167 F. Supp. 3d 1068, 1069 (N.D. Cal. 2016).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to

2

dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Id.* However, a plaintiff must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The Court does not credit allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.4 (9th Cir. 2012) (quotation omitted).

## III.   ANALYSIS

### A.   UCL Claims

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The three "prongs" of the UCL are independent of each other and may be asserted as separate claims. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999). The "unlawful" prong of the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1474 (Cal. Ct. App. 2006). The "unfair" prong treats as actionable conduct that "violates established public policy or . . . is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *Id.* at 1473. The UCL cannot, however, be used to proscribe otherwise permitted conducted. *Cel-Tech*, 20 Cal. 4th at 182 ("If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination."). Plaintiff brings UCL claims under both the "unlawful" and the "unfair" prongs.

Defendant argues that both of Plaintiff's UCL claims are nonetheless preempted by the FDCA because under federal law there is a grace period for discontinuing the use of PHO in food products. A federal statute has preemptive effect if it conflicts with state law. *Ting v. AT&T*, 319 F.3d 1126, 1135 (9th Cir. 2003). This can occur when "compliance with both federal and state

regulations is a physical impossibility" or when "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* The Court must look to the language of the statute and the overall statutory purpose to determine whether it is preempted. *Id.* at 1136.

### 1. Unlawful Business Practices

Plaintiff alleges that Defendant's use of PHO in its cookies was unlawful under both federal and state law. The Court disagrees.

Plaintiff first argues that the use of PHO violated the FDCA because PHO is not generally recognized as safe and its use rendered Defendant's cookies "adulterated," as defined by 21 U.S.C. § 342(a)(2)(C). This squarely conflicts with the FDA's Final Determination and the Consolidated Appropriations Act. The Act explicitly stated that PHO would not be considered unsafe or adulterated under the FDCA until June 18, 2018:

> No partially hydrogenated oils . . . shall be deemed unsafe within the meaning of [21 U.S.C. § 348(a)] and no food that is introduced or delivered for introduction into interstate commerce that bears or contains a partially hydrogenated oil shall be deemed adulterated under [21 U.S.C. § 342(a)(1) or § 342(a)(2)(C)(i) by virtue of bearing or containing a partially hydrogenated oil until the compliance date . . . (June 18, 2018).

Consolidated Appropriations Act, 2016, PL 114–113, December 18, 2015, 129 Stat 2242 (2015). This is not an exercise of "prosecutorial discretion," by merely delaying enforcement, as Plaintiff urges. *See* Dkt. No. 11 at 1, 3, 9. Instead, Congress declared that food containing PHO will not even be considered unsafe or adulterated until June 2018. This is in keeping with the FDA's acknowledgment that ongoing scrutiny of the health effects of PHO is appropriate as "knowledge advances and evolves over time." Final Determination, 80 Fed. Reg. 34650–01, 34653. The FDA specifically solicited additional "scientific evidence," noting that the compliance date would "allow time for such petitions and their review." *Id.*

Plaintiff next argues that Defendant's use of PHO violated California's Sherman Food, Drug and Cosmetics law ("Sherman Law"). Yet California's Sherman Law does not specifically

1    prohibit the use of PHO. Nor does it completely ban the use of trans fats. Instead the Sherman

2    Law largely tracks federal law, prohibiting the sale or advertisement of "adulterated" food and

3    food additives. *See, e.g.*, Cal. Health & Safety Code §§ 110398, 110545, 110620. Far from

4    contradicting federal law, the Sherman Law actually adopts all FDA regulations as state

5    regulations. *See* Cal. Health & Safety Code §§ 110085, 110115. Regardless, to interpret the

6    Sherman Law's broad prohibition of "adulterated" food as covering PHO would effectively negate

7    Congress' decision to set the compliance date in June 2018.

8          Yet the June 2018 date was not arbitrary. Rather, the FDA chose a compliance date that

9    would serve the interests of both consumers and the industry. During this compliance period, the

10   FDA could engage in further information gathering about PHO, its health implications, and its

11   possible ongoing uses. Final Determination, 80 Fed. Reg. 34650–01, 34653, 34668–69. The FDA

12   also understood that there were market limitations preventing the immediate "transition to new

13   oils." *Id.* at 34669. With this additional time, the FDA reasoned, the industry could identify,

14   grow, harvest, and process suitable replacement ingredients for PHO. *Id.* The industry could also

15   "exhaust existing product inventories, and [] reformulate and modify labeling of affected

16   products." *Id.* at 34668–69. Plaintiff's interpretation of the Sherman Law would render the use of

17   PHO *immediately* unlawful. The FDA would not have additional time to assess the scientific

18   evidence on PHO nor could the industry research and vet replacement oils. The Supreme Court

19   has previously acknowledged that providing time to phase in new standards is a legitimate

20   objective. *See, e.g.*, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 875, 881–82 (2000)

21   (recognizing that the Department of Transportation's passive restraint standard "would bring about

22   a mix of different devices introduced gradually over time . . . [and] would thereby lower costs,

23   overcome technical safety problems, encourage technological development, and win widespread

24   consumer acceptance.").[2] Plaintiff's interpretation of California law, however, would "stand[] as

---

[2] Plaintiff's reliance on *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015), is misplaced. It does not stand for the broad proposition that federal law cannot preempt state law food regulations. There, the Ninth Circuit considered whether the FDA's labeling requirements permitted companies to claim a product was "trans fat free," even if it contained low levels of trans fats. *Id.* at 962–63. The Ninth Circuit also found that an FDA letter did not have the force of law necessary to raise preemption concerns. *Id.* at 963–65.

an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Ting*, 319F.3d at 1136.

Plaintiff points out that the FDA left open the door for states to specifically legislate in this area by stating, "[t]here is no statutory provision in the [FDCA] providing for express preemption of any state or local law prohibiting or limiting use of PHOs in food, including state or local legislative requirements or common law duties" and that it "believes" such laws "are not likely to be in conflict with federal law, or to frustrate federal objectives." Final, 80 FR 34650–01, 34655. The Court agrees with the analysis of the court in *Backus v. Nestlé USA, Inc.* finding that this language is not dispositive. 167 F. Supp. 3d 1068, 1073 (N.D. Cal. 2016) (citing *Wyeth v. Levine*, 555 U.S. 555, 577 (2009)). The FDA actually asserted it was not "tak[ing] a position regarding the potential for implied preemptive effect of this order on any specific state or local law" and noted it would require a case-by-case analysis. *See* Final Determination, 80 Fed. Reg. 34650–01, 34655. The Act, for its part, is silent as to preemption. The Court finds that Plaintiff's interpretation of California's Sherman Law — as requiring an immediate ban on PHO — would conflict with the FDA and Congress's decision not to deem foods containing PHO unsafe or adulterated until June 18, 2018.

### 2. **Unfair Business Practices**

Plaintiff's claim that Defendant's conduct was "unfair" similarly fails as it is preempted by the FDCA. As discussed above, Congress established a compliance date, before which time companies can still use PHO in their products. Plaintiff cannot sidestep this by "relabel[ing] the nature of the action as one brought under the unfair competition statute." *Cel-Tech*, 20 Cal. 4th at 182 (quotation omitted). Plaintiff has not identified any action that Defendant took independent from the use of PHO in its cookies to support this claim.

### B.    **Plaintiff's Nuisance Claim Fails**

In addition to his UCL claims, Plaintiff also alleges that Defendant's sale of the cookies constitutes a public nuisance under California law. This makes an end-run around federal law, as

explained above, and regardless is unsupported by California law. A public nuisance is broadly defined as "[a]nything which is injurious to health . . . so as to interfere with the comfortable enjoyment of life or property . . . which affects at the same time an entire community or neighborhood, or any considerable number of persons." Cal. Civ. Code §§ 3479–80. Yet an individual can only maintain such suits if the conduct is "specially injurious to himself, but not otherwise." Cal. Civ. Code § 3493. California courts have interpreted this to require an injury that is "different in kind — not merely in degree — from that suffered by the general public." *Institoris v. City of Los Angeles*, 210 Cal. App. 3d 10, 20 (Cal. Ct. App. 1989).

Plaintiff has failed to explain how his injury differs from that of any other member of the public. Plaintiff suggests that it is enough that he alleged "physical and emotional harm" and "lost money" from consuming products that contain PHO. Compl. ¶ 89, 134. He contrasts that injury with the general public's concern for the "right to a safe food supply" and "interest in ensuring that only safe, uncontaminated foods [are] available for purchase." Compl. ¶¶ 129–135. Yet PHO constitutes a general health hazard to *anyone* who consumes it. Both Plaintiff and the public consequently face the same risk of harm due to the consumption of PHO and the cost of purchasing products containing it. Plaintiff cannot artificially limit the public's injury in order to evade the law's special injury requirement.

### C. Plaintiff's Breach of the Implied Warranty of Merchantability Fails

Plaintiff's last claim is a breach of the implied warranty of merchantability. This claim similarly fails. In California, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1). This implied warranty requires that goods "[a]re fit for the ordinary purposes for which such goods are used." *Id.* § 2314(2)(c). The implied warranty, however only provides for a minimum level of quality. To breach the implied warranty, a product must lack "even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (Cal. Ct. App. 2003) (citing Cal. Comm. Code § 2314(2)). Moreover, "there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to [a consumer]." Cal. Com. Code § 2316.

7

1 Here, as explained above, the FDA did not determine that products that contain PHO are
2 unfit for human consumption. Instead they provided a three-year window for further investigation
3 and phasing out. The FDA recognized that people would continue to consume products
4 containing PHO up until the compliance date as companies "exhaust[ed] existing product
5 inventories." Final Determination, 80 Fed. Reg. 34650–01, 34669. Additionally, Plaintiff does
6 not suggest that the products did not disclose the presence of PHO on their labels or that
7 Defendant otherwise hid their presence. Plaintiff simply alleges that he "is a busy person and
8 cannot reasonably inspect every ingredient of every food that he purchases for himself and others,
9 and he was unaware that [Defendant's Products] were dangerous when he purchased them."
10 Compl. ¶¶ 92–93, 96. On this basis, Plaintiff suggests that including PHO in the products was a
11 "latent defect." Although the implied warranty is designed to protect consumers against
12 undisclosed defects, Plaintiff does not provide any authority to support a claim where the
13 consumer is simply too busy to read the ingredients. *Cf. Mexia v. Rinker Boat Co.*, 174 Cal. App.
14 4th 1297, 1305 (Cal. Ct. App. 2009) ("Undisclosed latent defects . . . are the very evil that the
15 implied warranty of merchantability was designed to remedy.").
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

## IV.   CONCLUSION

For the reasons set forth above, the Court GRANTS WITH LEAVE TO AMEND Defendant's motion to dismiss.  Plaintiff may file an amended complaint within 21 days of the date of this Order if he is able to allege claims against Defendant that are not preempted by the June 2018 compliance date.  *See* Consolidated Appropriations Act, 2016, Pub. L. No. 114–113, § 754, 129 Stat 2242, 2284 (2015).  As explained above, Plaintiff's entire theory as to each cause of action currently pled is deficient as a matter of law, so Plaintiff must either (1) plead a different and sufficient basis for these claims if he can do so consistent with his obligations under Rule 11; or (2) confirm that he does not wish to amend and request dismissal with prejudice, *see Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1063–66 (9th Cir. 2004).

**IT IS SO ORDERED.**

Dated:   3/27/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge