UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY BACKUS,<br><br>    Plaintiff,<br><br>v.<br><br>BISCOMERICA CORPORATION,<br><br>    Defendant. | Case No. 16-cv-03916-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 38 |

Plaintiff Troy Backus brought this putative class action against Defendant Biscomerica Corporation, claiming that it violated California's Unfair Competition Law ("UCL") by selling packaged cookies that contained partially hydrogenated oil ("PHO"). *See* First Amended Complaint ("FAC"), Dkt. No. 35. The Court dismissed Backus's original complaint on preemption grounds. *See* Dkt. No. 32. Backus's amended complaint contains essentially the same allegations, except for alleging a narrower time period. And once again, Backus's claims crumble. Because the Court finds that Backus cannot plead a plausible UCL claim, the Court **GRANTS** Biscomerica's motion to dismiss without leave to amend.[1]

## I. BACKGROUND

### A. Plaintiff's Allegations

Biscomerica "manufactures, distributes, and sells a variety of packaged cookies" that contain partially hydrogenated oil. FAC ¶ 4. PHO is an artificial trans fat, a "toxic carcinogen for which there are many safe and commercially viable substitutes." *Id.* ¶¶ 5–6. Trans fat "causes cardiovascular heart disease, diabetes, cancer, organ damage, and Alzheimer's disease, and accelerates memory damage and cognitive decline." *Id.* ¶ 17.

---

[1] The Court finds that this matter is appropriate for disposition without oral argument. *See* Civ. L.R. 7–1(b).

Backus "repeatedly purchased and consumed" Biscomerica cookies containing PHO for "personal and household consumption." *Id.* ¶ 9, 12. Until late 2015, he bought these cookies "approximately once a month from various California stores." *Id.* ¶¶ 66–67. Backus was injured because he "lost money . . . because he purchased products that were detrimental to his health and were unfairly offered for sale in violation of federal and California law" and because he "suffered physical injury when he repeatedly consumed" the cookies. *Id.* ¶¶ 88–89. He was "unaware" that the cookies were "dangerous" because he "is a busy person and cannot reasonably inspect every ingredient of every food that he purchases for himself and others." *Id.* ¶ 92.

### B. Regulatory and Legislative Background

The Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits, among other things, the "introduction or delivery for introduction into interstate commerce of any food . . . that is adulterated." 21 U.S.C. § 331(a). This includes food additives that are "not generally recognized, among [qualified] experts . . . to be safe under the conditions of [their] intended use." *Id.* § 321(s); *see also* 21 C.F.R. 170.3(i) (defining "safe" as "a reasonable certainty in the minds of competent scientists that the substance is not harmful under the intended conditions of use"). Sections 342 and 348 further describe the conditions under which food and food additives may be considered "unsafe" or "adulterated." 21 U.S.C. §§ 342(a)(1), 342(a)(2)(C)(i), 348.

On November 8, 2013, the federal Food and Drug Administration ("FDA") "tentatively determined that there is no longer a consensus among qualified scientific experts that PHOs . . . are safe for human consumption." Tentative Determination Regarding Partially Hydrogenated Oils ("Tentative Determination"), 78 Fed. Reg. 67169, 67169 (Nov. 8, 2013). If the FDA's Tentative Determination that PHOs were no longer generally recognized as safe ("GRAS") were to become final, then "food manufacturers would no longer be permitted to sell PHOs . . . without prior FDA approval for use as a food additive." *Id.*

On June 17, 2015, the FDA confirmed its Tentative Determination, finding that "there is no longer a consensus among qualified experts that partially hydrogenated oils . . . are generally recognized as safe (GRAS) for any use in human food." *See* Final Determination Regarding Partially Hydrogenated Oils ("Final Determination"), 80 Fed. Reg. 34650, 34650 (June 17, 2015).

However, the Final Determination was not effective immediately—rather, the FDA set a compliance date of June 18, 2018. *See id.* This three-year window would allow the FDA to continue receiving and reviewing petitions to its order, *see id.* at 34,657, as well as minimize "market disruptions" and allow "industry sufficient time to identify suitable replacement ingredients for PHOs," *id.* at 34,669.

The President then signed the Consolidated Appropriations Act into law on December 18, 2015, which—consistent with the FDA's Final Determination—stated that PHO would not be considered unsafe or adulterated under federal law until the June 18, 2018 compliance date. Consolidated Appropriations Act, 2016, Pub. L. No. 114–113, § 754, 129 Stat. 2242, 2284 (2015) ("Section 754").

### C. Prior Proceedings Before This Court

Backus brought his initial complaint in this Court on July 12, 2016, asserting causes of action under state law, including: (1) California's UCL; (2) nuisance; and (3) the implied warranty of merchantability. *See* Complaint, Dkt. No. 1 ¶¶ 107–141. He asserted his claims on behalf of himself and a nationwide class of people who had purchased Biscomerica cookies on or after January 1, 2008. *See id.* ¶ 97.

On March 27, 2017, the Court granted Biscomerica's motion to dismiss. *See* Dkt. No. 32. First, the Court held that Backus's claim that the use of PHO was unlawful under the UCL failed because his interpretation of California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law") was preempted by Section 754. *See id.* at 4–6. Second, the Court held that use of PHO was not unfair under the UCL because it was similarly preempted. *See id.* at 6. Finally, the Court rejected Backus's nuisance and implied warranty of merchantability claims. *See id.* at 6–8. The Court granted Backus leave to amend his complaint but noted that his "entire theory as to each cause of action currently pled is deficient as a matter of law." *Id.* at 9.

### D. Plaintiff's Amended Complaint

Backus filed an amended complaint on April 17, 2017, asserting two UCL-based causes of action. First, Backus claimed that Biscomerica's use of PHO was unlawful under the UCL because the products were adulterated, thus violating the FDCA and the Sherman Law. *See id.* ¶¶

3

77–84, 107–20. Second, Backus claimed that Biscomerica's use of PHO was unfair under the UCL. *See id.* ¶¶ 71–76, 121–27. He purported to bring his claim on behalf of himself and a nationwide class of people who had purchased Biscomerica cookies containing partially hydrogenated oil between January 1, 2008 and June 16, 2015. *See id.* ¶ 97.

Biscomerica filed a motion to dismiss the amended complaint on May 5, 2017. *See* Dkt. No. 38 ("Mot."). Backus opposed on May 19, *see* Dkt. No. 40 ("Opp."), and Biscomerica replied on June 1, *see* Dkt. No. 41 ("Reply").

### E. The Stay and Ninth Circuit Proceedings

On June 22, 2017, the Court stayed the action, over Biscomerica's opposition, until two cases asserting similar claims were resolved by the Ninth Circuit. *See* Dkt. No. 45. In the first of those cases, *Hawkins v. AdvancePierre Foods, Inc.*, the Ninth Circuit assumed, without deciding, that the plaintiff's PHO claims were not preempted by federal law, but the court held that the plaintiff had nonetheless failed to state a claim for violation of the UCL or for breach of the implied warranty of merchantability. *See* 733 F. App'x 906, 906 (9th Cir. 2018). In the second case, *Hawkins v. Kroger Co.*, the Ninth Circuit declined to reach the preemption issue. *See* 906 F.3d 763, 772–73 (9th Cir. 2018). With the two cases decided, the Court lifted the stay on October 24, 2018 and ordered the parties to submit supplemental briefs addressing the impact of the two *Hawkins* cases. *See* Dkt. No. 55. Both Backus and Biscomerica filed supplemental briefs on November 8. *See* Dkt. Nos. 56, 57.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible

when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citation omitted).

### III. DISCUSSION

Backus asserts that because he purports to represent a class of consumers who purchased cookies containing PHO prior to the FDA's Final Determination, "neither the FDA's regulation nor the Appropriations Act can have any preemptive effect on Plaintiff's claims." *See* Opp. at 1. But Backus's new theory is just as unappetizing as his original theory, because federal law is clear that there was nothing unlawful or unfair about selling cookies containing PHO during the narrowed class period he pled in his amended complaint.

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The three "prongs" of the UCL are independent of each other and may be asserted as separate claims. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999). The "unlawful" prong of the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1474 (Cal. Ct. App. 2006). The "unfair" prong treats as actionable conduct that "violates established public policy or . . . is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *Id.* at 1473. The UCL cannot, however, be used to proscribe otherwise permitted

5

conduct. *Cel-Tech*, 20 Cal. 4th at 182 ("If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination."). Backus brings claims under both the "unlawful" and the "unfair" prongs of the UCL, *see* FAC ¶¶ 71–84, 107–27, and the Court will discuss them in turn.

### A. Unlawful Business Practices

Backus alleges that Biscomerica's use of PHO in its cookies was unlawful under both federal and state law. The Court disagrees.

#### i. The Use of PHO Was Not Unlawful Under Federal Law

First, Backus contends that PHO was not generally regarded as safe prior to the FDA's Final Determination and thus Biscomerica's use of PHO "rendered its products adulterated" under the FDCA. *See* FAC ¶ 77; Opp. at 1–3. But Congress was clear that use of PHO was not prohibited until 2018:

> No partially hydrogenated oils as defined in the order published by the Food and Drug Administration in the Federal Register on June 17, 2015 (80 Fed. Reg. 34650 et seq.) shall be deemed unsafe within the meaning of section 409(a) and no food that is introduced or delivered for introduction into interstate commerce that bears or contains a partially hydrogenated oil shall be deemed adulterated under sections 402(a)(1) or 402(a)(2)(C)(i) by virtue of bearing or containing a partially hydrogenated oil until the compliance date as specified in such order (June 18, 2018).

§ 754, 129 Stat. at 2284. Recognizing that Section 754 was the basis on which the Court dismissed his original complaint, Backus amended his complaint to "no longer seek[] relief for consumers who purchased [Biscomerica's] trans fat cookies after June 16, 2015, before the FDA enacted the compliance period." Opp. at 1. Backus's claim rests on his assertion that neither Section 754 nor the Final Determination have retroactive effect. Opp. at 4–6.

To be sure, there "is a presumption in American law against retroactive legislation." *Mtoched v. Lynch*, 786 F.3d 1210, 1214 (9th Cir. 2015). But if "Congress has expressly prescribed the statute's proper reach" then "there is no need to resort to judicial default rules." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). Here, Congress has done exactly that: it set a compliance date upon which use of PHOs would no longer be allowed under federal law. *Cf. Backus v. Gen. Mills, Inc.*, No. 15-CV-01964-WHO, 2018 WL 6460441, at *6 (N.D. Cal. Dec. 10,

2018) ("Simply put, before June 18, 2018, the use of PHOs in food was permissible . . . ."). Moreover, the principles undergirding the presumption against retroactivity—"that individuals should have an opportunity to know what the law is and to conform their conduct accordingly," *Landgraf*, 511 U.S. at 265—counsel towards finding Section 754 to be retroactive, because retroactivity would give producers time to conform their goods to the law. But according to Backus, PHO was unsafe from January 2008 until the FDA's Final Determination in June 2015, safe from June 2015 until the compliance date in June 2018, and unsafe again beginning in June 2018. Not only does Backus's formulation of Section 754 make little sense from a practical standpoint, but it would "impose a new duty . . . in respect to transactions or considerations already past," s*ee Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (alterations and internal quotation omitted), thus raising concerns about fairness and due process. The Court finds that Section 754 is retroactive, meaning that Biscomerica did not violate federal law by selling cookies containing PHO during the class period.

Even if Section 754 was not retroactive, two years before it was enacted the FDA recognized that PHOs "have a long history of use as food ingredients" dating back to the 1930s. Tentative Determination, 78 Fed. Reg. at 67170; *see also* Final Determination, 80 Fed. Reg. at 34651. Although two of the PHOs most commonly used in the food industry in 2013 were not "listed as GRAS in FDA's regulations . . . these and other commonly used PHOs . . . have been considered GRAS (through a GRAS self-determination) by the food industry for use in food at levels consistent with good manufacturing practice based on a history of use prior to 1958." Tentative Determination, 78 Fed. Reg. at 67170–71; *see also* Final Determination, 80 Fed. Reg. at 34651. In other words, even before Section 754 and the Final Determination created a compliance period, the FDA stated that PHO had historically been generally regarded as safe.

Because PHO was permitted prior to the 2018 compliance date and the FDA recognized that it was generally regarded as safe, Backus has not pled a plausible claim that Biscomerica violated federal law by selling cookies containing PHO prior to June 17, 2015. *Cf. Backus v. Conagra Foods, Inc.*, No. C 16-00454 WHA, 2016 WL 3844331, at *3 (N.D. Cal. July 15, 2016) (holding that federal law "cannot serve as the basis for [plaintiff's] 'unlawful' claim").

7

### ii. The Use of PHO Could Not Have Been Unlawful Under State Law

Second, Backus asserts that Biscomerica's use of PHO during the class period was unlawful under California's Sherman Law. *See* FAC ¶ 113–15. Once again, the Court finds that "to interpret the Sherman Law's broad prohibition of 'adulterated' food as covering PHO would effectively negate Congress' decision to set the compliance date in June 2018." *See* Dkt. No. 32 at 5.

The Sherman Law does not specifically prohibit the use of PHO nor completely ban the use of trans fats. Rather, the Sherman Law largely tracks federal law, prohibiting the sale or advertisement of "adulterated" food and food additives. *See, e.g.*, Cal. Health & Safety Code §§ 110398, 110545, 110620. And the Sherman Law adopts all FDA regulations as state regulations. *See* Cal. Health & Safety Code §§ 110085, 110115.

As discussed above, the use of PHO in food products was not prohibited by federal law during the class period. Thus, Biscomerica could not have violated Cal. Health & Safety Code § 110100, the portion of the Sherman Law that adopts federal law. *See AdvancePierre Foods*, 733 F. App'x at 907.

Backus also argues that PHO is a "poisonous and deleterious substance," thus rendering food containing PHO "adulterated" under California law independent of federal law. *See* Opp. at 3–4. But the Sherman Law could not independently prohibit the use of PHO, because federal law would preempt such a conclusion. In 2013 (during the amended complaint's class period), the FDA noted that there was a changing scientific consensus on the safety of PHOs, which had been generally regarded as safe and used in food products for decades. *See* Tentative Determination, 78 Fed. Reg. at 67170. The FDA and Congress later declared in a rulemaking and in legislation that foods containing PHO would not be deemed unsafe or adulterated until June 2018. *See* § 754, 129 Stat. at 2284; Final Determination, 80 Fed. Reg. at 34651. This three-year compliance period was necessary to minimize "market disruptions" and ensure that there was "sufficient time to identify suitable replacement ingredients." *See* Final Determination, 80 Fed. Reg. at 34657, 34669. If Backus was correct that PHO was independently prohibited under state law, this prohibition would "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of

Congress." *Ting v. AT&T*, 319 F.3d 1126, 1136 (9th Cir. 2003) (internal quotation omitted). In effect, he would be creating an immediate (albeit belated) ban on the use of PHO from the beginning of the class period in January 2008 to the FDA's Final Determination in June 2015. But such a delayed and drastic measure would stand as an obstacle to the FDA's careful considerations in 2013, the FDA's regulatory scheme creating a three-year window to minimize disruption and identify replacements, and Congress's ratification of the decision to allow partially hydrogenated oils until the 2018 compliance date. And it would negate Congress's decision to create a compliance date which, as discussed above, had retroactive effect. Accordingly, the Court finds that Backus's interpretation of the Sherman Law is barred based on the principle of conflict preemption.

### B. Unfair Business Practices

Backus also claims that Biscomerica's use of PHO was unfair under the UCL. *See* FAC ¶¶ 71–76, 121–27. Just as before, this cause of action fails because it is preempted by the FDCA. The FDA recognized that PHO was historically generally recognized as safe and Congress established a compliance date, before which time companies could still use PHO in their products. Backus cannot sidestep these decisions by the federal government by "relabel[ing] the nature of the action as one brought under the unfair competition statute." *Cel-Tech*, 20 Cal. 4th at 182 (quotation omitted). And Backus has not identified any action that Biscomerica took independent from the use of PHO in its cookies to support his unfair practice claim.

//
//
//
//
//
//
//
//
//

9

### IV. CONCLUSION

Backus's allegations in his amended complaint—which, other than the end date of the class period are the same as those in his original complaint—are deficient as a matter of law. Because the Court has already granted Backus leave to amend once before, and any further amendment would be futile, the Court **GRANTS** the motion to dismiss without leave to amend. The Clerk is directed to close the case and enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

Dated: 3/29/19

HAYWOOD S. GILLIAM, JR.
United States District Judge